## Case No. 14,137.

### The TRANSIT.

[3 Ben. 192.] [1]

District Court, S. D. New York. April, 1869.

COLLISION—AT SEA—SCHOONER AND PILOT BOAT —FREE WIND—VESSEL LYING TO.

1. Where a schooner, heading south southwest with the wind northwest, saw a pilot boat about a mile and a half off and about two points on her port bow, and the pilot boat, which was lying to, under a reefed mainsail and a jib with one bonnet out, and with her helm lashed to starboard, was heading about north, and making about a mile an hour, luffing up so as to cause her sails to shake and then falling off, and the schooner kept on without changing her course, although this luffing up and falling off of the pilot boat was seen several times, until the pilot boat, when about eighty yards off, took another luff across the bows of the schooner, which then, but too late, starboarded her helm, held, that, under the twelfth article of the act of April 29, 1864 (13 Stat. 60), it was the duty of the schooner to keep out of the way of the pilot boat, because the latter, though having the wind on her port side, was close hauled.

2. The schooner was in fault in not sooner changing her course.

3. The pilot boat was bound, under article 18, to keep her course, but she kept no course at all. It was her duty, when the schooner was seen ap-

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

proaching, to have unlashed her helm and kept steady on a course.

4. The damages must be apportioned between the two vessels.

[Cited in The Haverton, 31 Fed. 567.]

In admiralty.

Beebe, Dean & Donohue, for libellants.
Benedict & Benedict, for claimants.

BLATCHFORD, District Judge. This libel is filed by the owners of the pilot boat A. T. Stewart, to recover the sum of $4,969.20 for the damage caused to that vessel by a collision that occurred between her and the schooner Transit, on the morning of the 22d of May, 1866, about sunrise, in the Atlantic Ocean, some twenty miles east of Cape May lightship. The Transit was on a voyage from New York to Chesapeake Bay, and was on her course down the coast, heading south southwest, the wind being northwest, and two points abaft her beam on her starboard side, and blowing so much that, just before the collision, she had to take in her top sails. The pilot boat was heading about north, with a reef in her mainsail, her foresail furled and one bonnet out of her jib, and her helm lashed to the starboard. She was, therefore, closehauled, within about four points of the wind and with the wind on her port side. She had been in that condition all the preceding night, and was making headway at the rate of not over one knot an hour. It appears, by the testimony of the second mate of the Transit, that he and the master of the Transit saw the pilot boat at the distance of about a mile and a half off, about two points on the port bow of the Transit; that he noticed, as the two vessels approached each other, that the pilot boat was luffing up and then keeping off, her luffing up being to such an extent as to cause her sails to shake, and her falling off being to the extent of two points, and that, when she fell off and went ahead, her course would be for the port quarter of the Transit, and when she luffed up she would shoot across the bows of the Transit, and that this luffing up and falling off by the pilot boat was repeated several times, and noticed from the Transit, while the two vessels were so approaching each other. During all this time, notwithstanding this wild manœuvring on the part of the pilot boat, no change was made in the course of the Transit. She might easily have put her helm to starboard and gone under the stern of the pilot boat, but she persisted in trying to go to the windward of the pilot boat and across her bows. Finally, when the two vessels were about eighty yards apart, the pilot boat took another luff sharp across the bows of the Transit, and then, but too late, the helm of the Transit was put to the starboard and she tried to go to the leeward of the pilot boat, but failed to clear her, and struck her on her starboard bow, about eight feet from her stem, breaking her foremast into three

pieces, and causing other damage. Under article 12 of the act of April 29, 1864 (13 Stat. 60), it was the duty of the Transit, because she had the wind free, although she had it on the starboard side, to keep out of the way of the pilot boat, because the latter, although she had the wind on the port side, was closehauled. The Transit was clearly in fault in not starboarding her helm sooner, in view of the movements of the pilot boat, which were plainly to be seen and were seen from the Transit. But I think the pilot boat was also in fault. It was her duty, by article 18, to keep her course, in order to allow the Transit to keep out of the way. But she kept no course whatever. She was making headway at the rate of about a knot an hour, and, when she saw the Transit approaching, her helm should have been unlashed and she should have been kept steady on a fixed course, and not have been suffered to luff and fall off. It was reckless in her to keep her helm lashed, when she saw the Transit thus approaching, and it was equally reckless in the Transit to try and cross the bows of the pilot boat, under the circumstances. The damages, when ascertained, on a reference, must be divided. The question of costs is reserved, till the coming in of the report.

[For hearing on exceptions to commissioner's report, see Case No. 14,138.]